# Mihlbauer, Appellant, *v*. Infantry Corps of State Fencibles.

*Corporations—Unincorporated association—Lease.*

Where the membership and the purposes of an incorporated civil body and an unincorporated military body were nearly identical, and their names confused, and a lease was made by a municipality to the corporation, which was executed on the part of the lessee by the president and secretary of the corporation, and sealed with the corporate seal, the lease will be sustained in favor of the corporation, after the unincorporated military body had been attached to a regiment of the National Guards of Pennsylvania.

Argued Jan. 8, 1903. Appeal, No. 110, Jan. T., 1903, by plaintiffs, from decree of C. P. No. 3, Phila. Co., Dec. T., 1900, No. 918, on bill in equity in case of J. Harry Mihlbauer et al. v. Infantry Corps of State Fencibles et al. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

McCARTHY, J., found the facts to be as follows:

1. In 1813 was formed a military body, named " the Infantry Corps, State Fencibles." It consisted of one company of infantry, commanded by a captain and other company officers.

2. On March 11, 1876, a charter was granted incorporating

the " Infantry Corps of State Fencibles."   The purposes of the
corporation, as expressed in the charter, are " to aid and benefit
its members and to secure their proficiency in the military
science and for social enjoyments."   The members of the cor-
poration were, first and principally, active members, who were
the members of the military body; secondly, contributing mem-
bers, who were not members of the military body; and thirdly,
honorary members.

3. In 1878, under authority from the commonwealth, the corps
recruited three additional companies, and thereafter was known
as " the Infantry Battalion of State Fencibles."   The organ-
ization then consisted of four companies of infantry, designated
as " Company A," " Company B," " Company C " and " Com-
pany D," respectively, each company being commanded by its
captain and other company officers, and the whole battalion
being under command of a major and possessing a staff of
officers, commissioned and noncommissioned.

4. At the time of or shortly after the formation of the battal-
ion, a mistake arose as to the name of the corporation, which
became inveterate and has been perpetuated to the present time.
The word " Battalion " was substituted for " Corps " in the
name of the corporation, which was thereafter known, as well
to its members as to the community in general, by the erroneous
designation of " Infantry Battalion of State Fencibles."   This
substitution appears in the seal of the corporation, in the book
printed by the corporation and offered in evidence, containing
a copy of the charter, in the by-laws printed in the same volume,
in the bonds issued by the corporation, and in the bill and
answer in this case as originally filed.

5. There was not only confusion of the names of the two
bodies, but a confounding of their identity, so that the field,
staff, noncommissioned staff and company officers of the mili-
tary body, under the designation of " Board of Officers of the
State Fencibles Battalion," assumed to act as the corporate body,
enacted by-laws, elected officers, held meetings, and generally
conducted the business of the corporation.

6. On June 16, 1883, was approved an ordinance passed by the
select and common councils of the city of Philadelphia, author-
izing the commissioner of markets and city property to demise
to the " Infantry Battalion of State Fencibles, National Guard

of Pennsylvania," the city armory for ten years at a nominal rental, with privilege of extending the lease for ten years additional, and the proviso that the building should not be used "for other than military purposes."

7. On October 1, 1884, a lease in writing was executed between the city of Philadelphia and the "Infantry Corps of State Fencibles, National Guard of Pennsylvania, a body corporate of the state of Pennsylvania," reciting the afore-mentioned ordinance and demising the city armory to the said "Infantry Corps of State Fencibles" for the term and rental and with the privileges and restrictions set forth in the ordinance.    On behalf of the lessee, this instrument was signed by John W. Ryan, president, and Charles Berger, secretary of the corporation, and it was sealed with the corporate seal.    John W. Ryan at that time was also major of the battalion.

8. Upon the execution of the lease, the battalion and the corporation took possession of the armory, and have ever since occupied and used it, the battalion for drill, for storage of arms and equipments, as headquarters, and for other military purposes ; the corporation for meetings and transaction of corporate business.

9. On May 1, 1900, General Orders No. 17 issued from headquarters National Guard of Pennsylvania.    It begins :

"I. The following assignment of companies of the State Fencibles Battalion Infantry, is hereby made ; 'Company A, State Fencibles Battalion Infantry, Philadelphia, Captain Frederick G. Zeh, to be Company K, Sixth Regiment Infantry.'"

In three succeeding paragraphs it makes the like assignments of Companies B, C and D to be Companies M, L and E, Sixth Regiment, respectively.    It then directs commanding officers to report to commanding officer of the Sixth Regiment, and continues :

"II. Commanding officers of former companies of State Fencibles Battalion Infantry will immediately return cap ornaments to State Arsenal, Harrisburg, accompanied by proper invoice, and forward requisition through channels for supply of cap ornaments, with regimental number and new company letter."

This order did not assign the commanding officer of the battalion or the staff officers, commissioned and noncommissioned.

10. A large majority of the members of the battalion, being nearly three fourths of the whole number, were dissatisfied with General Order No. 17 and resigned, refusing to obey it. Among the number was the commanding officer of Company A. After his resignation, the members of Company A who continued in the command and obeyed the general order, becoming thereby Company K, Sixth Regiment Infantry, elected the plaintiff, Mihlbauer, to be their commanding officer, and he was afterward commissioned as captain of Company K, Sixth Regiment. Mihlbauer was formerly commanding officer of Company A, of the State Fencibles Battalion, but he resigned in 1894 and had not since been connected with the organization.

11. The four companies assigned by General Order No. 17, and thereby designated as Companies K, M, L and E, Sixth Regiment Infantry, respectively, were, after assignment, organized into a new battalion, designated as the Third Battalion, Sixth Regiment, and Major Lumb, a member of the Sixth Regiment, was assigned to command the new battalion.

12. After May 1, 1900, the members of the Infantry Battalion of State Fencibles who resigned, renewed their organization in four companies, with the old letter designations, A, B, C and D, respectively, and renewed also the battalion organization under the old commanding officer and under the old name of " Infantry Battalion, State Fencibles," dropping, however, the addition of " National Guard of Pennsylvania," which had been used formerly as part of the designation of the military body. The organization now musters 185 officers and men; it is not connected in any way with the National Guard. One of the companies has had several drills at the armory, but the four companies of the Sixth Regiment have continued to use and occupy the building with their company and battalion drills, so that all the nights of the week are engaged by them, and the State Fencibles Battalion have found it impossible to drill there under the present condition of affairs. The companies assigned to the Sixth Regiment have continued to use the armory since their assignment in much the same way as before, and the evidence does not sustain the averments of the bill that the plaintiffs have been excluded from the armory or interfered with in the use of it for military purposes. On the contrary, it appears that they have materially interfered with

the use of the building for military purposes by the military body adhering to and maintained by the corporation, and that they have been treated, notwithstanding this, with commendable forbearance.

13. In December, 1900, the plaintiffs, or some of them, with their associates, caused an application to be made to city councils for the passage of an ordinance to revoke the existing lease of the city armory, and to authorize a new lease of the same to be made, granting the use of it to the Sixth Regiment. The bill being referred to the joint committee on city property, several hearings were had before that committee, which reported the bill to councils with a negative recommendation, and, after discussion in councils, pro and con, the report of the committee was adopted, and the ordinance failed to pass.

14. Since May 1, 1900, neither the plaintiffs nor those on behalf of whom they sue, have either individually or collectively made any contribution whatever for the payment of the rent and cost of maintenance of the city armory.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Leoni Melick,* of *Melick, Potter & Dechert,* with him *Samuel F. Clevenger,* for appellants.

*Emanuel Furth,* with him *Jacob Singer* and *George S. Graham,* for appellees.

OPINION BY MR. JUSTICE FELL, March 23, 1903:

The bill in this case was filed by the captains of four companies that now constitute the third battalion of the Sixth Regiment, National Guards of Pennsylvania, to establish the right of the battalion to the exclusive possession of an armory leased by the city of Philadelphia. The lease was made in 1884 to "the Infantry Corps of State Fencibles, National Guard of Pennsylvania, a body corporate of the state of Pennsylvania." The corporation was chartered in 1876 for the purpose of aiding and benefiting its members, of securing their proficiency in military science, and for social enjoyment. Most of its members were members also of an independent military

company which was originally formed in 1813, but all of them were not.  Three additional companies were recruited in 1878, and a battalion formed which was known as the Infantry Battalion of State Fencibles.  From that time the management of the civil and military bodies was practically in the same hands and the word " battalion " was substituted for " corps " in speaking of the corporation.  The finding of fact is that " there was not only a confusion of the names of the two bodies, but a confounding of their identity, so that the field, staff, noncommissioned staff, and company officers of the military body, under the designation of Board of Officers of the State Fencibles Battalion, assumed to act as the corporate body, enacted by-laws, elected officers, held meetings and generally conducted the business of the corporation."  As the memberships and interests of the two bodies were nearly identical, there was no occasion to distinguish them until in 1900, when the four companies were assigned to the Sixth Regiment.  The order assigning these companies did not include the commanding officer of the battalion and his staff.  These officers, with some of the company officers who resigned after the transfer, formed new companies, and thus there became two bodies with antagonistic interests each claiming the right of possession of the armory.

The ordinance of councils authorizing the lease was passed in 1883, at which time the civil and military bodies were both known as the battalion.  It directed a lease to be made to " the Infantry Battalion of State Fencibles, National Guard of Pennsylvania."  The lease was in fact made to " the Infantry Corps of State Fencibles of the National Guard of Pennsylvania, a body corporate of the state of Pennsylvania."  Apparently this change was made by the city solicitor when he drew the lease. The lease was executed on the part of the lessee by the president and secretary of the corporation, and was sealed with the corporate seal.  These officers were also officers of the battalion, but they executed the lease in their official capacity as officers of the corporation, thus clearly drawing the distinction between the two bodies and designating the one which was to become the lessee.  The city for eighteen years has recognized the validity of the lease, and on application has refused to terminate it, and to authorize a new lease to the four companies.  These

facts and others established at the hearing fully sustain the finding by the court that the intention was to lease to the incorporated civil body, and not the unincorporated military body. This finding is conclusive of the rights of the parties.

The decree is affirmed at the cost of the appellant.